*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| **WILLIAM H. MEACHAM,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | *Civil No. 09-590-P-S* |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by an affective disorder and a personality disorder, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of the residuals of a right shoulder dislocation, an affective disorder, and alcohol abuse, Finding 2, Record at 10; that his impairments, including the substance use disorders, met the criteria of sections 12.04, 12.08, and 12.09 of Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, *id.*; that, if he stopped substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

activities and, therefore, he would continue to have a severe impairment or combination of impairments, Finding 4, *id*. at 11; that, if he stopped substance use, he would not have an impairment or combination of impairments that met or medically equaled the criteria of any of the Listings, Finding 5, *id*.; that, if he stopped substance use, considering his age (46 years old, defined as a younger individual, on the date his application was filed), education (at least high school), work experience (transferability of job skills immaterial), and residual functional capacity ("RFC"), there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 20-21;[2] that, because he would not be disabled if he stopped substance use, his substance use disorder was a contributing factor material to the determination of disability and that he, therefore, had not been disabled at any time from the date that his application was filed through the date of decision (July 17, 2009), Finding 11, *id*. at 21. The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] The details of the RFC found by the administrative law judge are not material either to the plaintiff's statement of errors or to my recommended decision.

While the administrative law judge reached Step 5 of the sequential process, the plaintiff's statement of errors implicates Step 3, as well as the determination that his substance use was material to his disability. At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(e)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.925(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.926(a)).

The need to determine whether substance use is material to disability stems from a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability." *Bartley v. Barnhart*, 117 Fed. Appx. 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C).

That Contract with America directive was in turn incorporated into the agency's regulations, which provide in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(b).

## I. Discussion

The plaintiff seeks reversal and remand on any of three bases: that (i) there is no substantial evidence to conclude that his substance abuse was a contributing factor material to his disability, (ii) the administrative law judge's finding that his condition, including substance use, met Listing 12.08 (personality disorders) is internally inconsistent with his finding that he had no medically determinable impairment of a personality disorder, and (iii) the administrative law judge's negative credibility finding is unsupported by substantial evidence. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 2-11. I find no reversible error and, accordingly, recommend that the court affirm the decision.

### A. Finding of Materiality of Substance Abuse

In deeming substance abuse material to the plaintiff's disability, the administrative law judge relied on the opinion of Disability Determination Services ("DDS") nonexamining consultant Lewis F. Lester, Ph.D., endorsed by James M. Claiborn, Ph.D., a mental-health expert present at the plaintiff's hearing. *See* Record at 19-20. Drs. Lester and Claiborn agreed that, when abusing substances, the plaintiff had moderate restrictions in activities of daily living, marked difficulties in social function, marked difficulties in concentration, persistence, or pace, and one or two episodes of decompensation, but that, when abstinent from all drug and alcohol use, he had no more than mild restrictions in activities of daily living, moderate difficulties in

4

social functioning, and moderate difficulties in concentration, persistence, or pace. *See id.* at 405, 415 (Lester assessment reflecting abstinence), 419, 429 (Lester assessment reflecting substance use), 476-78 (Claiborn hearing testimony).[3] Dr. Lester found that, when abstinent, the plaintiff suffered no episodes of decompensation of extended duration. *See id.* at 415. Dr. Lester, accepting the plaintiff's testimony at hearing that he made one of 14 suicide attempts while sober, found that he probably suffered at least one such episode when abstinent. *See id.* at 478-79.

Dr. Lester found that, regardless whether abstinent, the plaintiff suffered from a mood disorder Not Otherwise Specified, evaluated under Listing 12.04 (affective disorders), and a personality disorder Not Otherwise Specified, evaluated under Listing 12.08 (personality disorders). *See id.* at 405, 408, 412, 419, 422, 426. However, according to Dr. Lester, when the plaintiff was abstinent, his impairments did not meet or equal either Listing 12.04 or 12.08, *see id.* at 417, and when he was engaging in substance abuse, his impairments met Listing 12.09 (substance addiction disorders), *see id.* at 431. To meet Listing 12.09, a claimant must display "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system" *and* meet at least one of nine separate listings, including Listings 12.04 and 12.08. *See* Listing 12.09. Dr. Lester did not specify whether, when the plaintiff was abusing substances, his condition met Listing 12.04, Listing 12.08, or both. *See* Record at 431.

---

[3] There is no expert opinion of record to the contrary. David R. Houston, Ph.D., completed an earlier assessment in which he rated the plaintiff as having mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with insufficient evidence of episodes of decompensation of extended duration, based upon the plaintiff's affective disorder of bipolar Not Otherwise Specified, in partial remission. *See* Record at 359, 362, 369. He did not specify whether his evaluation did or did not reflect active substance abuse and expressed no opinion as to the materiality of substance abuse. *See id.* at 359-71.

Dr. Claiborn agreed with Dr. Lester that the plaintiff had a medically determinable impairment of an affective disorder (albeit described by Dr. Claiborn as a bipolar disorder), that he met Listing 12.09 when abusing substances, and that he did not meet or equal any listing when abstinent. *See id*. at 476-77. However, Dr. Claiborn disagreed that the plaintiff had a medically determinable personality disorder. *See id*. at 476.

The plaintiff contends that both Dr. Lester and Dr. Claiborn erred in deeming his substance abuse material to his disability, undermining the administrative law judge's reliance on their opinions, because:

1. The record demonstrates that the plaintiff had a long history of auditory hallucinations, suicide attempts, and severe mood swings notwithstanding any alcohol or substance abuse. *See* Statement of Errors at 4. He contends that he testified at hearing that his suicide attempts did not involve substance abuse and that the medical evidence reveals that he heard voices telling him to hurt himself and experienced mood swings even when sober. *See id*. at 4-6.

2. When questioned as to whether there was any evidence of episodes of decompensation not connected with alcohol, Dr. Claiborn responded that it was "impossible to sort out" and that it was "not clear" that the plaintiff's suicide attempts occurred outside of periods of substance abuse. *See id*. at 6 (quoting Record at 478).

3. Dr. Claiborn stated that, even without abusing substances, the plaintiff still would have trouble knowing where he was supposed to go and what he was supposed to be doing, acknowledging that "it's not going to go away even treated." *Id*. (quoting Record at 479).

4.      Dr. Lester failed to explain why or how the plaintiff's substance abuse caused greater functional limitations, undermining reliance on his assessments as substantial evidence of the plaintiff's functioning with and without substances. *See id*. at 9.

The plaintiff argues that the record supports, at most, a finding that it is impossible to sort out which of his functional limitations would remain if he were abstinent, a circumstance in which, in accordance with *Ambrose v. Astrue*, No. 07-84-B-W, 2008 WL 648957 (D. Me. Mar. 5, 2008) (rec. dec., *aff'd* Mar. 26, 2008), and the commissioner's EM [Emergency Message]-96200, analyzed in *Ambrose*, a finding that his substance abuse is not material is warranted. *See id*. at 6-9.[4]

I perceive no basis on which to disturb the administrative law judge's reliance on the uncontroverted expert evidence that substance abuse was material to the finding of disability. While Dr. Lester did not explain the basis for his finding, he cited medical evidence supporting it, *see* Record at 431, and Dr. Claiborn did provide an explanation, *see id*. at 476-77. Further, in choosing to credit the Lester and Claiborn opinions on materiality, the administrative law judge reasonably found them consistent with the evidence of record, particularly progress notes of treating psychiatrist W. Bogan Brooks, M.D., spanning the period from November 15, 2006, to March 29, 2009, as well as observations of Tom Kubasik, MHRT, in a crisis center evaluation dated October 13, 2006. *See id*. at 14-16, 20.[5]

Dr. Brooks' notes reveal that the plaintiff's condition markedly improved when he ceased abusing substances and became compliant with his prescribed medication regimen. *See, e.g., id*. at 323 (plaintiff noted on February 28, 2008, to have been abstinent for two weeks and to be

---

[4] EM-96200 advises, in relevant part, that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA [drug and and/or alcohol addiction] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *Ambrose*, 2008 WL 648957, at *4 (quoting EM-96200).
[5] An "MHRT" is a Mental Health Rehabilitation Technician. *See* 34-B M.R.S.A. § 3801(11).

tolerating Geodon, with better sleep, a more stable mood, and no hallucinations or delusions), 332 (plaintiff noted on August 15, 2007, to be maintaining sobriety and to state that he does better on, than off, Depakote and Seroquel), 355 (plaintiff noted on March 26, 2008, to have tolerated an increase in Geodon, with good appetite, energy, and mood, no mood swings or hallucinations, and some intermittent insomnia; advised to continue abstaining from all nonprescribed drugs and alcohol), 459 (plaintiff noted on March 10, 2009, to have improved sleep, a better appetite, better energy, an improved mood, and diminished auditory hallucinations on medications and sober).

Conversely, when the plaintiff abused substances and ceased taking his prescribed psychiatric medications, his condition deteriorated. *See, e.g., id*. at 328 (plaintiff noted on October 10, 2007, to have been feeling good on Depakote and then stopped it, whereupon he began having mood swings and started medicating himself with alcohol and marijuana), 460 (plaintiff noted on March 9, 2009, to have been feeling good on and doing fairly well on Geodon when previously seen by Dr. Brooks on March 26, 2008, but then, because he was feeling good, to have ceased taking his prescribed medication and resumed drinking alcohol; although he had regained sobriety approximately a week earlier, he had been experiencing mood swings, both high and low, and auditory hallucinations since discontinuing Geodon).

As Dr. Claiborn noted, *see id*. at 476-77, the plaintiff himself acknowledged the difference in his functioning when sober and compliant with prescribed medications, *see id*. at 34 (plaintiff still hears voices when taking his medication, but not as much), 38 (if plaintiff is not abusing substances and is taking his prescribed medication, he "level[s] off" and nothing bothers him), 467 (plaintiff now is on medication called Geodon, and it works), 469-70 (during period when plaintiff was sober for two and a half years, his depression was "[a]ll right" because he was

taking his medications; at that time, difficulties with his shoulder were what prevented him from working).

In addition, as the administrative law judge noted, Kubasik, a mental health technician, performed a crisis center screening on October 13, 2006, in which he observed that the plaintiff's substance abuse had impacted his social and occupational activities. *See id*. at 352.

As the plaintiff points out, *see* Statement of Errors at 4-5, the record corroborates that he suffered residuals of a mental impairment or impairments even when abstinent from substance use; for example, he sometimes still had auditory hallucinations or mood swings, *see, e.g*., Record at 326, 337, 459. However, these residuals were taken into account by both Drs. Lester and Claiborn in assessing the severity of his condition when abstinent from substance use. *See, e.g., id*. at 435, 476-81. Their existence does not undermine the finding that substance abuse was material to disability.

While Dr. Claiborn did testify at hearing that it was impossible to sort out which of the plaintiff's 14 suicide attempts may have been made while he was sober, the plaintiff himself immediately supplied an answer, testifying that he was sober when he made a suicide attempt in 2006 because his wife was leaving him. *See id*. at 478. Dr. Claiborn accepted that testimony, amending his opinion to state that the plaintiff probably had at least one episode of decompensation while sober. *See id*. at 478-79. However, that did not change Dr. Claiborn's overall conclusion that substance abuse was material to a finding of disability. *See id*. at 480-81. Moreover, as counsel for the commissioner pointed out at oral argument, the plaintiff indicated to treating providers in late 2006 that his most recent suicide attempt had occurred in 2001. *See id*. at 341, 345. Taking those reports at face value, the suicide attempts predate the plaintiff's alleged onset date of disability, March 11, 2005, by several years.

*Ambrose* and EM-96200 are distinguishable. Whereas, in *Ambrose*, the administrative law judge had either mischaracterized or ignored the opinions of a consulting examiner and a treating physician that it was impossible to separate limitations caused by alcoholism from those caused by other mental disorders, *see Ambrose*, 2008 WL 648957, at *4-*5, *6 n.6, no such expert opinion was offered in this case. Further, as noted above, the materiality opinions of Drs. Lester and Claiborn were supported by substantial evidence.

The administrative law judge committed no error in characterizing the plaintiff's substance abuse as a contributing factor material to the determination of his disability.

## B. Inconsistent Findings

The plaintiff next points out that the administrative law judge stated that he had no medically determinable personality disorder and yet found him to meet Listing 12.08 (personality disorder) when abusing substances. *See* Statement of Errors at 10. He argues that "[t]hese contradictory findings merit a remand to determine whether [his] personality disorder meets or equals Listing 12.08 (Personality disorder) and, if appropriate, to address the functional limitations caused by his personality disorder." *Id*.

I find no reversible error. The administrative law judge's finding that the plaintiff met Listing 12.08 appears to be a scrivener's error. In explaining the finding in question, he stated that the plaintiff's mental impairments when not abstinent from drug and alcohol use met Listings 12.04 and 12.09. *See* Record at 10. In any event, even assuming *arguendo* that he meant to find that the plaintiff met Listing 12.08 when abusing substances, any error is harmless. As noted above, he supportably found the plaintiff's substance abuse material to his disability. That finding precludes an award of benefits regardless of whether the plaintiff is deemed to have met Listings 12.09, 12.04, and 12.08, or only Listings 12.09 and 12.04, when abusing substances.

## C. Credibility Determination

The plaintiff finally argues that the administrative law judge made a credibility finding unsupported by substantial evidence, drawing a negative inference on the basis of an assumption that, despite the plaintiff's allegation that he had no income, he must have been doing work of some kind to obtain alcohol, marijuana, and tobacco. *See* Statement of Errors at 10-11. The plaintiff contends that this is not the sort of "specific finding" that entitles an administrative law judge's credibility determination to deference, but rather a wholly unsubstantiated assumption. *See id.*; *see also, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

This argument carries some weight. Nonetheless, any error is harmless. As noted above, the administrative law judge adopted the opinions of Drs. Lester and Claiborn as to the plaintiff's functional capacities, both when abusing substances and when abstinent. Neither of those opinions was predicated on a negative credibility finding. *See* Record at 417 (notation by Dr. Lester that the plaintiff's "statements of functional mental limitations are generally credible"), 480 (testimony of Dr. Claiborn that he found the plaintiff's testimony credible). The administrative law judge's negative credibility finding accordingly was not outcome-determinative.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

<u>***NOTICE***</u>

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2010.

> /s/  John H. Rich III
> John H. Rich III
> United States Magistrate Judge